■ In the Matter of PRINCESS C. and Others, Children Alleged to be Permanently Neglected. ALBANY COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; LAVONIA D., Appellant. [718 NYS2d 737] —Cardona, P. J. Appeal from an order of the Family Court of Albany County (Maney, J.), entered November 3, 1999, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondent's children to be permanently neglected, and terminated respondent's parental rights.

Respondent is the mother of Princess C. (born in 1987), Jyrese C. (born in 1988), Lareisha D. (born in 1991), Usavius D. (born in 1994) and Autumn D. (born in 1997).* Princess, Jyrese, Lareisha and Usavius were placed in petitioner's custody in June 1997 and Autumn was placed in petitioner's custody in September 1997 following the filing of various neglect petitions. In connection therewith, respondent was subject to orders of supervision, protection and placement requiring her, *inter alia*, to comply with certain conditions in order to obtain the return of her children. In November 1998, as the result of respondent's failure to satisfactorily comply with the conditions, petitioner filed a petition seeking to declare all the children permanently neglected and terminate respondent's parental rights. In July 1999, Family Court conducted a fact-finding hearing resulting in findings of permanent neglect. After an August 1999 dispositional hearing, the court entered an order adjudicating the children to be permanently neglected and terminated respondent's parental rights which led to this appeal.

The threshold inquiry in a permanent neglect proceeding is whether the petitioning agency exercised diligent efforts in strengthening the parent-child relationship which requires, *inter alia*, providing "counseling, making suitable arrangements for visitation, providing assistance to the parents to resolve or ameliorate the problems preventing discharge of the child to their care and advising the parent at appropriate intervals of the child's progress and development" (*Matter of Star Leslie W.*, 63 NY2d 136, 142; *see, Matter of Matthew YY.*, 274 AD2d 685, 686). Once diligent efforts have been established, the focus turns to whether there is clear and convincing evidence that, for a period of one year after the child was placed

---

* Ronald C. is the father of Princess and Jyrese. An adjudication of permanent neglect has been made with respect to those two children and a suspended judgment has been entered against him. Torrance D. is the father of Lareisha, Usavius and Autumn and a judgment terminating his parental rights of all three children has been entered.

in the agency's custody, the parent "(1) failed to substantially and continuously maintain contact with the child, or alternatively, (2) failed to plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship" (*Matter of Joseph ZZ.*, 245 AD2d 881, 883, *lv denied* 91 NY2d 810; *see*, Social Services Law § 384-b [7] [a]; *see also*, *Matter of Star Leslie W.*, *supra*, at 142-143; *Matter of Matthew YY.*, *supra*, at 686; *Matter of Richard W.*, 265 AD2d 685, 687). The parent bears the responsibility of taking steps to correct the conditions which led to the removal of the child from the home and to realistically plan for the child's future financial, emotional and physical well-being (*see*, *Matter of Nathaniel T.*, 67 NY2d 838, 840; *Matter of Matthew YY.*, *supra*, at 686; *Matter of Chianti FF.*, 205 AD2d 849, 850). "[A] parent's failure to utilize available services or fully cooperate with the authorized agency are factors to be considered in assessing whether a parent has complied with the statutory requirements" (*Matter of Matthew YY.*, *supra*, at 686-687; *see*, *Matter of Jeremy KK.*, 251 AD2d 904, 906).

Initially, we find no merit to respondent's claim that petitioner did not exercise diligent efforts as required. The problems precluding respondent from retaining custody of her children were her dysfunctional relationship with her husband, Torrance D., characterized by episodes of domestic violence and substance abuse, her lack of stable housing, her inability to effectively interact and relate to her children and also her depression over the death of her mother. In addition, some of the children, particularly Jyrese, have special needs requiring meaningful action. Petitioner devised a plan to address the concerns which included respondent's participation in domestic violence counseling through Project Strive and supervised visitation with the children through Parsons Child & Family Center and St. Catherine's Center for Children.

Respondent also received a mental health evaluation and was referred to a MICA program for mental health counseling. She underwent an evaluation for substance abuse treatment and also participated in preventive services at Trinity Institution which included counseling for Jyrese. In addition, Steve Siegard, a social worker for Parsons Child & Family Center, attempted to secure stable housing for respondent through Shelter Plus Care and Impacts. Siegard provided respondent and her children with transportation to and from various services. Furthermore, a variety of services were provided to the children including occupational, physical and speech therapy

for Usavius, sexual abuse evaluations for Princess and Lareisha and individual counseling and special education services for Jyrese. In light of the foregoing, petitioner clearly fulfilled its obligation to exercise diligent efforts (see, *Matter of Tasha LL.*, 227 AD2d 795, 797, *lv denied* 88 NY2d 813).

Furthermore, contrary to respondent's claim, the record contains clear and convincing evidence that "respondent failed for a continuous period of one year or more to substantially plan for the future of the children, although physically and financially able to do so" (*Matter of Amoretta V.*, 227 AD2d 879, *lv dismissed* 89 NY2d 935). Rainbow Gregory, the caseworker charged with supervising respondent's visits with Autumn, testified that respondent missed 11 of 12 required sessions and failed to bond with her daughter during the session she attended. She stated that in December 1997 respondent discontinued participation in Project Strive because she did not feel the program was meeting her needs.

Gregory further stated that, during the spring of 1999, respondent failed to participate in a medical review involving a change of medication for Jyrese. She indicated that as time progressed respondent's visitation with the children became inconsistent and she did not regularly attend permanency meetings or counseling. She stated that, when respondent finally found a place to live in December 1998 or January 1999, she did not inform Parsons Child & Family Center or petitioner. She further alleged that, although respondent physically separated from her husband in July 1998, she maintained a sporadic relationship with him which sent a confusing message to the children. Gregory testified that Family Court ultimately suspended visitation in March 1999.

Siegard confirmed much of Gregory's testimony. He stated that respondent's visitation was more inconsistent after Christmas 1998 at which time the children's behavior became increasingly disruptive. He indicated that respondent stopped visitation and terminated all involvement with the agency in February 1999. He stated that he tried to help respondent find a home through Shelter Plus Care and Impacts, but respondent was not interested in the counseling services accompanying those programs. Siegard acknowledged that by February 1999 respondent had made progress in terms of finally securing an apartment, a job and a vehicle. He further indicated that respondent's depression had lifted after she began working. He opined, however, that respondent was still in need of a plan for managing depression, interacting with her children and maintaining a stable home.

Respondent acknowledged that she failed to complete many of the programs which were part of the plan devised by petitioner. However, she indicated that, at the time of the fact-finding hearing, she had been employed for 10 months and was not living with her husband. She stated that she was living in an apartment appropriate for children since February 1999. She further testified that, at the time of the hearing, she did not have physical visitation with any of the children although she spoke by telephone to Jyrese once a week.

Inasmuch as respondent did not fully avail herself of the services provided by petitioner or adequately address the problems which led to the removal of the children in the first instance, the record amply supports Family Court's finding that the children were permanently neglected (*see, e.g., Matter of Ashlee X.*, 244 AD2d 707; *Matter of Torrin G.*, 240 AD2d 820; *Matter of Amoretta V., supra*). Nevertheless, this record is not clear that termination of respondent's parental rights was appropriate.

We note that the best interest of a child is the sole criterion to be considered at a dispositional hearing after a finding of permanent neglect (*see,* Family Ct Act § 631; *Matter of Anthony OO.*, 258 AD2d 788, 789). Although we are not saying that termination of respondent's parental rights was improper, we cannot reasonably review this determination because this record does not sufficiently demonstrate the facts supporting the conclusion that termination is necessarily in the best interest of each child (*see, Matter of Nereida S.*, 57 NY2d 636, 640; *Matter of Michael E.*, 241 AD2d 635, 638). For example, we cannot determine whether respondent's apparent progress in certain areas as set forth at the fact-finding hearing was considered at the dispositional hearing (*cf., Matter of Alexis E.*, 272 AD2d 935). Nor, as a further example, can we discern the effect of termination on Jyrese considering that his permanency plan includes continuing involvement of his father whose parental rights have not been terminated. Unfortunately, the proof submitted at the dispositional hearing was minimal, at best, and, therefore, inadequate to permit a reasoned determination of each child's best interest. Accordingly, in order to expedite a permanency plan for each of the children, we withhold decision and remit the matter for a further dispositional hearing which shall be held within 90 days of the date of this Court's decision.

Mercure, Crew III, Peters and Rose, JJ., concur. Ordered that the decision is withheld, and matter remitted to the Family Court of Albany County for further proceedings not inconsistent with this Court's decision.